IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONTFORT SQUARE SHOPPING CENTER, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-1673-D |
| VS. | § | |
| | § | |
| GOODYEAR TIRE & RUBBER COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Goodyear Tire & Rubber Company's ("Goodyear's") July 19, 2012 motion for reconsideration is denied.

I

In the court's prior memorandum opinion and order in this case, *Montfort Square Shopping Center, Ltd. v. Goodyear Tire & Rubber Co.*, 2012 WL 2358163 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) ("*Montfort I*"), it granted partial summary judgment in favor of plaintiff Montfort Square Shopping Center, Ltd. ("Montfort"). The court held, in pertinent part, that Montfort had established that Goodyear breached the lease agreement ("Lease") by leaving contamination on the leased premises after the Lease had terminated. *Id.* at *9-10. Goodyear moves for reconsideration, contending that the court's attempt to harmonize the Lease provisions has yielded untenable and oppressive results and that the phrase "no contamination" in § 5.13 of the Lease should be interpreted as requiring no contamination

above applicable regulatory standards.[1]

II

In denying the motion for reconsideration, the court will address Goodyear's argument that, in harmonizing §§ 5.13 and 5.15, the court has interpreted the Lease in a way that leads to "unreasonable, inequitable, and oppressive results." D. Mot. for Recons. 15. In *Montfort I* the court held that § 5.15 required that, during the Lease term, Goodyear must "clean up and remove all contamination to meet applicable standards of relevant governmental authorities or under applicable environmental laws," if any spill, discharge, or release of hazardous substances occurred. *Montfort I*, 2012 WL 2358163, at *9. But the court concluded that a different standard controlled at the time Goodyear surrendered the property or terminated the Lease. Under § 5.13, when Goodyear surrendered the property or terminated the Lease, it "shall . . . leave *no contamination* from its use and occupancy of the Demised Premises." *Id.* at *8 (emphasis added).

Goodyear cites Texas case law for the proposition that, when interpreting a contract, a court should "avoid, when possible and proper, a construction that is 'unreasonable, inequitable, and oppressive.'" D. Mot. for Recons. 14 (quoting *Frost Nat'l Bank v. L&F*

[1]"Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *3 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) (citation and internal quotation marks omitted). Goodyear has not demonstrated that the court committed a manifest error of law or fact or that Goodyear relies on newly discovered evidence. And the court's reasoning and conclusions in *Montfort I* adequately account for Goodyear's present arguments.

*Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005)). The cases Goodyear cites, however, do not require that courts in all circumstances avoid "unreasonable, inequitable, and oppressive" results. Rather, courts must avoid these types of interpretations "*when possible and proper,*" or when a contract is susceptible to two interpretations—one reasonable, and one unreasonable. *Frost*, 165 S.W.3d at 312 (emphasis added); *see also, e.g.*, *Aspen Tech. Inc. v. Harrity*, 2012 WL 897778, at *4 (Tex. App. Mar. 15, 2012, no pet.) (mem. op.) (refusing to accept defendant's interpretation of contract where there was another, more reasonable interpretation). The Lease is not susceptible to two interpretations (one reasonable and the other unreasonable) or otherwise ambiguous. Nor is it possible or proper to disregard the clear differences in the cleanup standards that the Lease imposes at different points in time. The court thus interprets the Lease's provisions as written and holds the parties to the terms of their agreement.

The Lease clearly provides that if, during the Lease term, any spill, discharge, or release of hazardous substances occurs, Goodyear must "clean up and remove all contamination to meet applicable standards of relevant governmental authorities or under applicable environmental laws." P. App. 91-92 (Lease § 5.15). Other Lease provisions refer to this "clean-up standard" as the controlling standard for remediation work performed during the Lease term. *E.g. id.* at 86 (Lease § 5.5) ("Lessee represents and warrants that it will competently perform and supervise any removal or remediation work to the applicable clean up standard that it or Lessor reasonably determines is necessary with regard to Hazardous Materials generated by Lessee that are discovered on the Demised Premises[.]").

It is therefore clear that, when the parties intended to require that Goodyear clean up contamination to the extent necessary to meet applicable standards of relevant governmental authorities, they said so explicitly. Sections 5.5 and 5.15 of the Lease reflect this intent.

But when establishing Goodyear's responsibilities upon surrender of the property or termination of the Lease, the parties did not impose a "clean up standard" measured according to compliance with "applicable standards of relevant governmental authorities or under applicable environmental laws." Instead, under § 5.13, they agreed that, when Goodyear surrendered the property or terminated the Lease, Goodyear "shall leave *no contamination* from its use and occupancy of the Demised Premises." *Id.* at 91 (emphasis added). This higher standard of "no contamination" applied at the time Goodyear surrendered the property or terminated the Lease.

Because the Lease uses different language in § 5.13, requiring that Goodyear "shall leave no contamination," it is clear that the parties intended for Goodyear's cleanup obligation upon surrender of the property or termination of the Lease to be more onerous than its obligations during the Lease term, as set forth in § 5.15.[2] And there is no language

---

[2]This interpretation is not only faithful to the parties' clear intent, as reflected in the Lease's terms, it is consistent with what Montfort as property owner would logically have required. During the Lease term, Montfort would not necessarily be concerned about all facets of the property's marketability; it would be concerned that Goodyear's contamination could subject Montfort to liabilty for violations of environmental standards, so the Lease requires during its term that Goodyear comply with these standards. But once the Lease had terminated, Montfort would be in the position of negotiating a lease or sale of the property, and a prospective lessee or buyer could insist on lower rent or a reduced sales price due to the presence of contamination, even though the contamination did not violate applicable environmental standards. The Lease therefore logically requires that Goodyear leave no

in § 5.13 or elsewhere in the Lease that supports Goodyear's argument that "no contamination" must be interpreted to mean no contamination that is greater than what is permitted under environmental standards.

Accordingly, the court interprets "no contamination" to mean what it says. Upon surrender of the property or termination of the Lease, Goodyear "shall leave no contamination from its use and occupancy" of the property. *Id.*

* * *

Goodyear's July 19, 2012 motion for reconsideration is denied.

**SO ORDERED.**

September 6, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE

contamination on the property at the time it is surrendered.